IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JERMAINE ALEXANDER RAMSEY                                       PLAINTIFF

V.                                                             CIVIL ACTION NO. 4:18-CV-00178-RP

MANAGEMENT TRAINING & CORPORATION, et al.             DEFENDANTS

MEMORANDUM OPINION AND ORDER

Plaintiff Jermaine Alexander Ramsey, proceeding *pro se* and *in forma pauperis*, filed suit under 42 U.S.C. § 1983 against Management Training & Corporation ("MTC"), Warden Patricia Doty, Deputy Warden Harold Taylor, and Dr. Hunter Williamson, alleging that they denied him appropriate medical care-and did so in retaliation for an old case he unsuccessfully prosecuted against MTC. Defendants have moved for summary judgment. Having reviewed the submissions and arguments of the parties, as well as the applicable law, the Court finds that Defendants' motions should be granted.

Plaintiff's Allegations and Background Facts

Ramsey was formerly housed at the Marshall County Correctional Facility ("MCCF"),[1] from June 8, 2018 until September 13, 2018.[2] Ramsey claims that on the evening of July 19, 2018, he advised prison security staff that he was having trouble breathing, dizziness, and severe chest pains.[3] Ramsey further alleges that despite these symptoms, the MCCF medical clinic refused to see him because he had already been examined and treated earlier that day. Later that same evening, Ramsey asserts that he "collapsed face first in his cell," and sustained injuries to

---

[1] Pursuant to its contract with the Mississippi Department of Corrections, MTC has managed and operated MCCF since 2013.
[2] Ramsey is currently housed at the South Mississippi Correctional Institution.
[3] Ramsey believes that these medical issues can be attributed to an alleged slip-and-fall incident which occurred two months earlier when he was housed at the Mississippi State Penitentiary in Parchman.

his head, jawbone and neck.  According to Ramsey, he received no medical treatment following his alleged fall until a week later, and that treatment was for a "totally different" issue.

Ramsey filed the instant lawsuit on August 27, 2018, alleging that Warden Doty, Deputy Warden Walker, and Dr. Williamson were personally responsible for the alleged denial of medical care.  Ramsey further contends that Defendants' actions were taken in retaliation for a lawsuit he unsuccessfully prosecuted against MTC in 2016.  He asks the court to award him monetary damages and an order directing that he be released from custody.  On July 25, 2019, Defendants filed separate motions for summary judgment.  Doc. #s 97, 99.  Ramsey filed his responses in opposition on September 4 and September 11, 2019.  Doc. #s 105, 106.  Dr. Williamson filed his reply to Ramsey's response on September 11, 2019.  Doc. # 107.

## Summary Judgment Standard

Summary judgment is appropriate only when the pleadings and evidence, viewed in the light most favorable to the nonmoving party, illustrate that no genuine issue of material facts exists, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is deemed "material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (citation and internal quotation mark omitted).  "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden."  *Beck v. Texas State Bd. Of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Celotex*, 477 U.S. at 323. In other words, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Beck*, 204 F.3d at 633. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73(1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan,* 497 U.S. at 888.

Thus, in considering a motion for summary judgment, the court must determine whether the non-moving party's allegations are plausible. *Matsushita*, 475 U.S. at 586. Once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extant supportable by the record*, . . . [the ultimate decision becomes] . . . a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

Denial of Medical Care

Ramsey claims that Defendants committed a constitutional violation in failing to provide him adequate medical care. This claim fails for a multitude of reasons. First, Ramsey has not

demonstrated that Defendants Doty, Walker, or Dr. Williamson had any personal involvement in the alleged denial of medical care. Moreover, Defendant MTC, as a private corporation, cannot be held vicariously liable under these circumstances. Finally, the evidence clearly negates Ramsey's contention that Defendants acted with deliberate indifference.

*Supervisor Liability*

A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Instead, to state a viable claim under § 1983, the plaintiff must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozana v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, or (2) when he implements an unconstitutional policy that results in the constitutional injury. *Wernecke v.* Garcia, 591 F.3d 386, 401 (5th Cir. 2009). Consequently, a supervisory official "can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

In this case, Ramsey has failed to demonstrate that Warden Doty, Deputy Warden Walker, or Dr. Williamson had any personal involvement or were causally connected to the alleged denial of medical care in any way. Instead, Ramsey merely asserts that an unidentified prison guard told him that Warden Doty and Deputy Warden Walker made the alleged decision to deny his request for medical care. Ramsey additionally contends that another unidentified prison official advised him that Dr. Williamson was personally responsible for his medical treatment on the date in question. As these are out-of-court statements used to prove the truth of

4

the matter asserted, they constitute hearsay and cannot be used to support the plaintiff's claim during consideration of the summary judgment motion. Ramsey has produced no evidence demonstrating that Defendants Doty, Walker, or Dr. Williamson were physically present during the alleged incidents, nor is there any evidence that these defendants ever interfered with, or were personally involved in, the alleged inadequate medical treatment provided to the plaintiff. Moreover, Ramsey has failed to identify an unconstitutional policy implemented by the supervisory defendants which caused the complained of injury. In fact, he has not asserted the existence of any unconstitutional policy. The court, therefore, finds that Ramsey's claims for denial of medical care against Defendants Walker, Doty, and Dr. Williams fail as a matter of law.

*Corporate Liability*

Ramsey additionally seeks to hold MTC liable for the acts of its employees. However, "just as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, so is a private corporation not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Lonoaea v. Corrections Corp. of America*, 665 F. Supp. 2d 677, 685 (N.D. Miss. 2009) (citing *Hicks v. Corrections Corp. of America*, 2009 WL 2969898 (W.D. La. 2009) (internal quotation mark omitted). Thus, a private corporation may be held liable only when an official corporate policy or custom causes the constitutional violation, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002), or when the plaintiff has shown that the corporation acted with deliberate indifference in hiring, supervising and/or training its employees, *see Lonoaea*, 665 F. Supp. 3d at 685 (citing *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997); *City of Canton v. Harris*, 489 U.S. 378 (1989)).

Ramsey has not identified any official MTC policy, practice, or custom associated with the alleged constitutional violation nor has he asserted that MTC acted with deliberate indifference in hiring, supervising and/or training its employees. Accordingly, the court finds that Ramsey's claim against MTC is without merit.

*Deliberate Indifference*

Even assuming, *arguendo*, that the named defendants could be held liable for the alleged denial of medical care, any such claim fails for want of admissible proof to support it.[4] Ramsey's constitutional right to medical care was abridged only if officials were deliberately indifferent to his serious medical needs, as deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1978). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless the plaintiff alleges facts which, if true, would demonstrate that the prison official (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 847.

"Deliberate indifference is not established when medical records indicate that [the [plaintiff] was afforded extensive medical care by prison officials." *Brauner v.* Coody, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment provided. *Id.*;

---

[4] Attached to his complaint [1] and response [106] in opposition to Defendants' motions for summary judgment are unauthenticated "copies" of alleged sick call requests submitted by Ramsey while at MCCF. Although such evidence is inadmissible, the court notes that all of these alleged sick call requests were dated prior to the alleged incident and, consequently, are irrelevant to the issues presented. Moreover, Ramsey has been admonished for utilizing this same practice in other cases before this court. *See Ramsey v. Morris*, No. 4:18-CV-145-DAS (N.D. Miss.); *Ramsey v. Morris*, No. 4:18-CV-220-NBB-RP (N.D. Miss.).

*see also Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Rather, liability under the deliberate indifference standard requires the plaintiff to produce evidence "that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Davidson v. Texas Dept. of Crim. J.*, 91 F. App'x 963, 965 (5th Cir. 2004) (citation omitted); *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Ramsey asserts that on the evening of July 19, 2018, the MCCF medical clinic refused to provide medical care for his symptoms of heavy breathing, dizziness, and severe chest pains.[5] Ramsey further alleges that following the medical clinic's refusal to treat him, he "collapsed face first in his cell," sustaining injuries to his head, jawbone and neck. After regaining consciousness, Ramsey alleges that he requested medical treatment which was denied. Despite these alleged injuries, Ramsey maintains that he was not provided medical treatment until a week later. Ramsey's assertions regarding the incident, however, are completely unsubstantiated and directly contradicted by his medical records.

While his medical records do reveal that Ramsey was treated earlier in the day for similar symptoms—heavy breathing and chest pain—there is no evidence to support Ramsey's assertion that he requested medical treatment on the night of July 19, 2018, or that such request was denied. In fact, according to his medical records, Ramsey did not complain of the alleged fall and resulting injuries until July 22, 2018. Moreover, Ramsey was treated on July 20, 2018, the

---

[5] Plaintiff's allegations have changed throughout the course of this litigation. In his complaint [1] and responses [105, 106] in opposition to Defendants' motions for summary judgment, Ramsey contends that on the evening of July 19, 2018, he advised MCCF security staff that he was having difficulty breathing, chest pains, and dizziness. At his *Spears* hearing, however, Ramsey stated that he had complained only of "double vision" that night. *See* Doc. # 30, p.4.

day after the alleged incident, and he did not mention having collapsed in his cell or sustaining any injuries, nor were any such injuries visible.

Ramsey's medical records further reflect that he was seen by MCCF medical staff on numerous occasions following the alleged incident: July 20, 2018; July 24, 2018; July 25, 2018; July 26, 2018; and July 29, 2018. These medical visits were precipitated by Ramsey's repeated complaints of "random" instances of heavy breathing, chest pain, dizziness and numbness on his right side. During these visits, Ramsey underwent an x-ray, multiple EKGs, a breathing treatment, and physical assessments. All produced normal results. Ramsey was also prescribed pain medications and placed on certain restrictions to help alleviate his alleged symptoms. Not only did Ramsey receive medical care in the days immediately following the alleged incident, he was seen and treated by MCCF medical staff on a continuing basis during the entirety of his stay at that facility.

Based on the competent summary judgment evidence before the court, it is apparent that Ramsey was provided treatment for his numerous sick call requests. Ramsey's medical records indicate an ongoing course of treatment, and his allegations to the contrary fail to satisfy the deliberate indifference standard. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."); *Harris v. Epps*, 523 F. App'x 275, 275 (5th Cir. 2013) (affirming summary judgment where inmate's medical records indicated he had received ongoing medical treatment). Thus, Defendants are entitled to summary judgment on this claim.

## Retaliation

At the outset, the court notes that Plaintiff's claim for retaliation has been asserted only against Warden Doty and Deputy Warden Walker. Prison officials may not retaliate against

prisoners for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). The elements of a claim under a retaliation theory are the plaintiff's invocation of a "specific constitutional right," the defendant's intent to retaliate against the plaintiff for his exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive, the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (citations omitted), *cert. denied*, 516 U.S. 1084 (1996).

In this case, the plaintiff must prove that he engaged in constitutionally protected activity (prosecuting a civil case against MTC), faced a consequence (denial of medical care), and that such action was taken "in an effort to chill [his] access to the courts or to punish [him] for having brought suit." *Enplanar99, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir. 1987). The showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir. 1995); *see also Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

The plaintiff cannot make such a showing in this case for two reasons. First, for the reasons explained above, Ramsey has failed to demonstrate that he suffered a "consequence," i.e. denial of medical care. Moreover, Ramsey's "constitutionally protected activity," the lawsuit against MTC, involved allegations concerning his stay at East Mississippi Correctional Facility ("EMCF"), a different facility than the one at issue here. The evidence shows that Defendants Doty and Walker were never employed at EMCF and, consequently, were not involved in nor even aware of this prior lawsuit. Ramsey bases this claim entirely on his unsupported belief that some EMCF personnel transferred to MCCF while he was there. Yet, Ramsey fails to identify these alleged employees or otherwise substantiate the allegation. It logically follows then that

9

Defendants Doty and Walker could not have retaliated against Ramsey for a prior lawsuit of which they knew nothing about. Thus, the court finds that Ramsey's claim for retaliation must fail.

<u>Conclusion</u>

Based on the foregoing discussion, the court finds that the evidence set forth in this case does not support Plaintiff's claims for unconstitutional denial of medical care and retaliation. Accordingly, Defendants' motions for summary judgment [97][99] are **GRANTED**, and judgment will be entered in their favor. A separate final judgment in accordance with this Memorandum Opinion and Order will issue today.

**SO ORDERED**, this the 15th day of October, 2019.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE